# In the United States Court of Federal Claims

No. 18-831C
Filed: December 17, 2018

* * * * * * * * * * * * * * * * * *   *
                                      *
JAY HYMAS, d/b/a DOSMEN FARMS,        *
                                      *
            Plaintiff,                *      Pro   Se   Plaintiff;   Motion   to
                                      *      Dismiss;      Subject      Matter
v.                                    *      Jurisdiction; In Forma Pauperis;
                                      *      28 U.S.C. § 1500.
UNITED STATES,                        *
                                      *
            Defendant.                *
                                      *
* * * * * * * * * * * * * * * * * *   *

Jay Hymas, d/b/a Dosmen Farms, Pro Se, Richland, Washington.

Daniel K. Greene, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for defendant. With him were Douglas Mickle, Assistant Director, Robert E. Kirschman, Jr., Director, and Joseph H. Hunt, Assistant Attorney General.

## O P I N I O N

HORN, J.

## FINDINGS OF FACT

On June 11, 2018, pro se plaintiff Jay Hymas, doing business as Dosmen Farms, filed a two-page, double-spaced complaint in the United States Court of Federal Claims, captioned as Hymas v. United States, Case No. 18-831C (Fed. Cl. June 11, 2018) (Hymas VIII),[1] which plaintiff captioned as a "Bid Protest," as well as an Application to Proceed In Forma Pauperis. (capitalization in original). In the complaint, plaintiff alleges that "Defendant, The United States Department of the Interior" violated "Federal contracting law," and that plaintiff's complaint "invokes the jurisdiction of this Court via the Tucker Act, 28 U.S.C. § 1491 a & b." (capitalization in original). Plaintiff's complaint requests "[i]njunctive relief for all active CFAs [cooperative farming agreements] to be bid in open competition per Federal procurement and contract law," as well as "[d]eclaratory relief that the current so-called 'CFP' [cooperative farming program] is an unlawful program currently being operated by agencies of the DOI [United State Department of Interior]."

---

[1] The history of the litigation filed by Mr. Hymas is laid out below.

According to plaintiff's complaint:

> For decades the DOI has been engaging in procuring the services of farmers nationwide to grow crops and manage federal lands under a quasi-official program euphemistically referred to using what it calls "Cooperative Farming Agreements" (hereinafter "CFA"). It is claimed by the DOI that it has legislative authority to enter into cooperative agreements by congressional legislative authorization for farming on federal lands by DOI agencies, Plaintiff disputes this claim but regardless this action centers on the fact that the DOI does nothing to make these so-called CFAs actual assistance awards per the Federal Grant and Cooperative Agreement Act (31 U.S. Code § 6301)[2] other than the deceptive moniker given them - Cooperative Farming Agreements. No record exists within www.grants.gov of any CFAs for recent years as required by all assistance programs, in addition the forms used (if used at all) contain no valid OMB [United States Office of Management and Budget] number or OMB and GAO [United States Government Accountability Office] oversite. The "Cooperative Farming Program" has been and is a "black-operation" in every sense as used by the DOI. The DOI agencies assistance offices do not even recognize nor do they practice the required oversight of these CFAs as part of their assistance programs, for example see the Fish and Wildlife Service program list at https://www.fws.gov/grants/programs.html.

(footnote omitted; capitalization in original). The URL cited above by plaintiff leads to a webpage regarding financial assistance programs, including grants and cooperative agreements administered by the United States Fish and Wildlife Service. Plaintiff asserts that he "has requested via letters to the DOI and its agencies, since 2015, to be allowed to compete in its 'CFP' nationally, to date Plaintiff has had no response nor has any notice been found at www.grants.gov."

Plaintiff alleges that the Cooperative Farming Program "appears to exist solely to skirt Federal law and not comply with Federal law." (capitalization in original). Plaintiff argues

> that the "Program" does little if anything to bring the hidden program into compliance within the family of other assistance programs this action by agencies of the DOI must be considered "contracts" or "procurements" and not a valid assistance program much like this Court's reasoning in Contract Mgmt. Servs. v. Mass. Hous. Fin. Agency, [sic] 745 F.3d 1379, 1381

---

2 The statute at 31 U.S.C. § 6301 (2012) states that the purpose of the chapter is to "promote a better understanding of United States Government expenditures and help eliminate unnecessary administrative requirements on recipients of Government awards by characterizing the relationship between executive agencies and contractors, States, local governments, and other recipients in acquiring property and services and in providing United States Government assistance." 31 U.S.C. § 6301(1).

(Fed.Cir. [sic] 2014) where it was held that a contract labeled a "cooperative agreement" was a procurement within the meaning of the Tucker Act.

According to plaintiff, "[p]laintiff has been prejudiced capriciously but also every other American farmer nationally including those classes of individuals and entities that would have otherwise received special consideration due to their underrepresented status such as women farmers or beginning farmers, etc." In plaintiff's complaint, plaintiff does not indicate whether the United States Fish and Wildlife Service has ever awarded plaintiff a cooperative farming agreement or during which years the Fish and Wildlife Service awarded the cooperative farming agreements plaintiff is challenging.

The statute at 31 U.S.C. § 6305 (2012) provides:

An executive agency shall use a cooperative agreement as the legal instrument reflecting a relationship between the United States Government and a State, a local government, or other recipient when--

(1) the principal purpose of the relationship is to transfer a thing of value to the State, local government, or other recipient to carry out a public purpose of support or stimulation authorized by a law of the United States instead of acquiring (by purchase, lease, or barter) property or services for the direct benefit or use of the United States Government; and

(2) substantial involvement is expected between the executive agency and the State, local government, or other recipient when carrying out the activity contemplated in the agreement.

31 U.S.C. § 6305. In defendant's motion to dismiss, defendant argues that "Mr. Hymas's complaint takes issue with the fact that the Department of the Interior, particularly the [Fish and Wildlife] Service, does not publish on certain Government websites the names of the farmers who have entered into cooperative agreements to farm land located within National Wildlife Refuges."[3] According to defendant's motion to dismiss, in the 1970s, the Fish and Wildlife Service initiated an ongoing process of entering into cooperative agreements with farmers in order to manage public lands in the National Wildlife Refuge System. Defendant states that, under the agreements between the Fish and Wildlife Service and farmers, the farmers farm public lands with crops that "are beneficial to migratory birds and wildlife." Defendant asserts that the government does not pay the farmers, but that farmers retain seventy-five percent of the crops the farmers produce on the public lands. Defendant states that the remaining twenty-five percent of crops the farmers produce are used to feed migratory birds and wildlife. According to defendant, under the cooperative agreements between the farmers and the Fish and Wildlife Service,

---

[3] In plaintiff's complaint, plaintiff does not indicate whether plaintiff resides near or owns land near a wildlife refuge.

"[f]or its part, the Service advises on crop selection, farming methods, use of pesticide and fertilizer, and crop harvest."

In defendant's motion to dismiss, defendant states that, "[i]n a previous litigation before this Court, Mr. Hymas took issue with the Service's awards in 2013 and 2014 to other farmers [sic] cooperative agreements to farm several fields within the Umatilla National Wildlife Refuge and the McNary National Wildlife Refuge, both located in the Pacific Northwest." (citation omitted). Mr. Hymas filed a bid protest in the United States Court of Federal Claims on April 25, 2013, which was assigned to Judge Braden of this court. In that case, Mr. Hymas asserted that the Fish and Wildlife Service's award of cooperative farming agreements in 2013 for the McNary and Umatilla refuges violated federal procurement law. See Hymas v. United States, 117 Fed. Cl. 466, 470 (2014) (Hymas I), vacated, 810 F.3d 1312 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2016), cert. denied, 137 S. Ct. 2196 (2017). On February 25, 2014, Mr. Hymas filed an amended complaint which also challenged the Fish and Wildlife Service's subsequent award of cooperative farming agreements in 2014. See id.

Thus, according to plaintiff, the Fish and Wildlife Service's selection process for awarding cooperative farming agreements had violated numerous statutes when the Fish and Wildlife Service awarded multiple cooperative farming agreements for the McNary National Wildlife Refuge (McNary refuge) and Umatilla National Wildlife Refuge (Umatilla refuge) to farmers other than Mr. Hymas. See id. at 496. On July 25, 2014, Judge Braden issued an Opinion finding in favor of Mr. Hymas, which stated:

> the United States of America, the United States Department of the Interior, the Fish and Wildlife Service, and their officers, agents, employees, and representatives are enjoined from entering into any cooperative farming agreements or other contractual vehicles concerning the McNary and Umatilla National Wildlife Refuges for the 2015 farming season or thereafter, unless and until the selection process and award comply with the CICA [Competition in Contracting Act, 41 U.S.C. § 3301 (2012)], FGCAA [Federal Grant and Cooperative Agreement Act, 33 U.S.C. §§ 6301–6308], and the APA [Administrative Procedure Act, 5 U.S.C. §§ 701–06 (2012)].

Id. at 508. The court in Hymas I stated that "[t]he Administrative Record demonstrates that the Fish and Wildlife Service contracted with farmer-cooperators, not to benefit them financially, but to obtain their services to provide food for migratory birds and wildlife, in exchange for the farmers' personal use of public-owned lands." Id. at 487. According to the court in Hymas I, "the cooperative farming agreements in this case are procurements, subject to the Tucker Act," and within the court's bid protest jurisdiction. Id. The Hymas I court stated that the "the Service will terminate the cooperative farming agreements" identified in the Hymas I court's Opinion, all of which were entered into by the Fish and Wildlife Service in 2013 or 2014 and concerned either the McNary refuge or Umatilla refuge. Id. at 509.

Judgement in the case was entered on July 28, 2014. According to defendant's motion to dismiss in the above-captioned case, after the court in Hymas I issued its July 25, 2014 Opinion, the Fish and Wildlife Service terminated the cooperative farming agreements the Fish and Wildlife Service had entered into in 2013 and 2014 for the McNary and Umatilla refuges. Defendant states that, "for the farming year 2015," the Fish and Wildlife Service issued a solicitation to award "purchase orders" for farming services on the McNary and Umatilla refuges. Defendant asserts that the Fish and Wildlife Service did not select Mr. Hymas for award of a purchase order under the solicitation issued "for the farming year 2015."

On September 24, 2014, the United States filed a notice of appeal of the United States Court of Federal Claims decision by Judge Braden in Hymas I and the subsequent judgment concerning the Fish and Wildlife Service's award of cooperative farming agreements in 2013 and 2014. On January 14, 2016, the United States Court of Appeals for the Federal Circuit issued an Opinion addressing the defendant's appeal. See Hymas v. United States, 810 F.3d 1312 (Fed. Cir.) (Hymas II), reh'g en banc denied (Fed. Cir. 2016), cert. denied, 137 S. Ct. 2196 (2017). In Hymas II, two members of the Federal Circuit, in a majority Opinion, determined that the Fish and Wildlife Service had the statutory authority to negotiate cooperative agreements. See id. at 1318-22. The Hymas II court majority determined that the cooperative farming agreements at issue in Hymas II were cooperative agreements, rather than procurement contracts. See id. at 1327. The Federal Circuit majority Opinion in Hymas II stated:

> First, the Service principally intended the CFAs to transfer a thing of value (i.e., the right to farm specific refuge lands and retain a share of the crop yield) to carry out a public purpose authorized by law (i.e., to conserve wildlife on the refuges). Indeed, the 1958 Act provides that the Service "is authorized to provide assistance to, and cooperate with, . . . public or private agencies and organizations in the development, protection, rearing, and stocking of all species of wildlife, resources thereof, and their habitat." 16 U.S.C. § 661. Likewise, the 1998 Act authorizes the agency to "negotiate and enter into a cooperative agreement with a . . . person to implement one or more projects or programs for a refuge." 16 U.S.C. § 742f(d)(2)(A). Thus, there is no serious dispute that assisting private farmers to promote wildlife conservation is the *sine qua non* of the CFAs. Second, the Service remains substantially involved in the activity, advising on decisions related to crop selection, farming methods, pesticide and fertilizer use, and crop harvest.

> The CFAs cannot be construed as procurement contracts because the agency did not intend to acquire farming "services" for the "direct benefit or use of the United States Government." 31 U.S.C. § 6305(1); see 41 U.S.C. § 111 (defining "procurement" as encompassing "all stages of the process of acquiring property or services"). True, the CFAs indirectly benefit the Service since the private farmers' activities advance the agency's overall mission, but that is true for nearly all cooperative agreements.

Id. at 1327-28 (internal references omitted; omissions in original; emphasis in original).

The Hymas II court determined that, because the farming agreements were cooperative agreements, the Tucker Act did not provide the United States Court of Federal Claims with jurisdiction under 28 U.S.C. § 1491(b). Id. at 1329-30. The Hymas II court, therefore, vacated the judgment issued in Hymas I and remanded "for disposition consistent with this Opinion, including the dissolution of the permanent injunction and the dismissal of Mr. Hymas's action." Id. at 1330.[4] In a footnote in Hymas II, the United States Court of Appeals for the Federal Circuit stated that, "[b]ecause the Claims Court does not possess jurisdiction over Mr. Hymas's complaint, we need not address its findings that the Service violated various federal procurement laws and the APA when it entered into the CFAs." Id. at 1330 fn.10. Subsequently, Mr. Hymas filed a petition for writ of certiorari, which the United States Supreme Court denied on May 30, 2017. See Hymas v. United States, 137 S. Ct. 2196 (2017) (Hymas III).

On April 6, 2016, the United States Court of Appeals for the Federal Circuit issued a mandate vacating the judgment entered by the Hymas I court and remanding for disposition consistent with the majority Opinion in Hymas II. On April 7, 2016, Mr. Hymas filed a motion to transfer plaintiff's case to the United States District Court for the Eastern District of Washington. See Hymas v. United States, 126 Fed. Cl. 195, 195 (2016) (Hymas IV). On April 11, 2016, the United States Court of Federal Claims in Hymas IV issued an Order granting Mr. Hymas' April 7, 2016 motion and directing the Clerk of the Court to transfer Mr. Hymas' case to the United States District Court for the Eastern District of Washington. See id.

On December 14, 2016, Mr. Hymas filed a seven-count "AMENDED COMPLAINT" in the United States District Court for the Eastern District of Washington in Hymas v. United States Department of Interior, Case No. 4:16-CV-5091-SMJ. (capitalization in original).[5] Count I alleged that the Fish and Wildlife Service had violated CICA; Count II alleged that the Fish and Wildlife Service had violated the Federal Grant and Cooperative Agreement Act; Count III asserted that the Fish and Wildlife Service's selection of farmers for cooperative farming agreements in 2012–2015 was arbitrary, capricious, an abuse of discretion, and contrary to law; Count IV alleged that Mr. Hymas had filed a bid protest at

---

[4] The Opinion in Hymas II was written by Judge Wallach, who was joined by Chief Judge Prost, with Judge Stoll issuing a dissenting Opinion. The dissenting Opinion in Hymas II asserted that "the CFAs at issue here must be entered into as procurement contracts, giving the Claims Court subject matter jurisdiction under the Tucker Act and subjecting the CFAs to federal procurement laws such as the CICA." Hymas II, 810 F.3d at 1333 (Stoll, J. dissenting).

[5] John P. Schaefer was listed as counsel of record for Mr. Hymas in Hymas I, Hymas II, and Hymas IV. Mr. Hymas proceeded pro se in Hymas III, before the United States District Court for the Eastern District of Washington in Hymas V and Hymas VI, and, as discussed below, Mr. Hymas is currently proceeding pro se before the United States Court of Appeals for the Ninth Circuit. Mr. Hymas also is appearing pro se in the case currently before this court.

the GAO, which had issued an "adverse decision" against Mr. Hymas, and that Mr. Hymas was "appeal[ing]" the decision of the GAO; Count V alleged that "citizens of counties [were] denied share of federal land revenue," Count VI argued that a "class action is warranted;" and Count VII indicated that Mr. Hymas was filing an "appeal of FOIA [Freedom of Information Act] determinations" regarding FOIA requests Mr. Hymas had filed with the DOI.

On March 20, 2017, the United States District Court for the Eastern District of Washington issued an Opinion addressing a partial motion to dismiss filed by the defendant in that court. See Hymas v. U.S. Dep't of Interior, No. 4:16-CV-5091-SMJ, 2017 WL 3258716, at *1 (E.D. Wash. Mar. 20, 2017) (Hymas V), recons. denied, No. 4:16-CV-5091-SMJ, 2017 WL 3255283 (E.D. Wash. Apr. 25, 2017). The defendant in Hymas V had moved to dismiss "each of Hymas's claims, except for his claim that the FWS's [the Fish and Wildlife Service's] award of CFAs was arbitrary, capricious, an abuse of discretion, or contrary to law," which was asserted in Count III of Mr. Hymas' amended complaint. See id. at *1. Regarding Counts I and II of Mr. Hymas' amended complaint, the United States District Court for the Eastern District of Washington stated that "[t]he Federal Circuit's decision conclusively resolved Hymas's CICA and FGCAA claims, and those claims must be dismissed." Id. at *4. The United States District Court for the Eastern District of Washington concluded that it lacked jurisdiction over Count IV of Mr. Hymas' amended complaint, which involved Mr. Hymas' "appeal" of a GAO decision, and dismissed Count IV of Mr. Hymas' amended complaint. See id. at *5. The United States District Court for the Eastern District of Washington dismissed Count V, which asserted "citizens of counties [were] denied share of federal land revenue," because Mr. Hymas had failed to state a claim and dismissed Count VI because Mr. Hymas, "as a pro se litigant, cannot represent the class either as class counsel or as a representative party." Id. at *6 (citations omitted). The United States District Court for the Eastern District of Washington also dismissed Count VII of Mr. Hymas' amended complaint because Mr. Hymas had failed to state a plausible claim under FOIA. See id.

On August 3, 2017, approximately four months after the issuance of Hymas V by the Eastern District of Washington, the Fish and Wildlife Service issued an update to part 620, chapter 2, titled "Cooperative Agricultural Use," of the Fish and Wildlife Service Manual, which superseded all previous policies and remains in effect as of the date of the issuance of this Opinion. See U.S. FISH AND WILDLIFE SERV., 620 FW 2, THE FISH AND WILDLIFE SERVICE MANUAL (2018), https://www.fws.gov/policy/620fw2.html. In defendant's motion to dismiss in this court (Hymas VIII), defendant states that:

> Before the Service promulgated the August 2017 policy discussed above, there was no requirement that the Service publish on www.grants.gov (or any website) its cooperative farming opportunities; however, the new policy includes a provision stating that the Service will post on www.grants.gov an annual notice that will refer interested farmers to the Service web page that identifies cooperative farming opportunities.

Defendant now argues that, currently, "[t]here is no requirement of which we are aware that agencies post on a Government website the identities of cooperators who have executed cooperative agreements that do not involve Government spending, and as noted above, the Service does not pay cooperators."

Part 620, chapter 2, of the Fish and Wildlife Service Manual, as published on August 3, 2017, prescribes the Fish and Wildlife Service's "policy for use of cooperative agriculture on National Wildlife Refuge System (NWRS) lands." According to section 2.4B of part 620, chapter 2, "[f]or cooperative agriculture in the NWRS, we [the Fish and Wildlife Service] use cooperative agreements, known as CAAs [cooperative agricultural agreements[6]] as the legal instruments to formalize the cooperative agreement between the Service and the cooperator." (internal reference omitted). Section 2.10 states that the Fish and Wildlife Service "awards a CAA on NWRS lands through a competitive process based on objective criteria in compliance with applicable laws, regulations, and policy," as outlined in section 2.11.

When awarding cooperative agricultural agreements, section 2.11 of part 620, chapter 2, indicates that the Fish and Wildlife Service "must publish an annual Notice of Funding Opportunity (NOFO) on Grants.gov," as well as a "a Notice of Cooperative Agricultural Opportunity (Notice) for any individual CAA on NWRS lands, as that opportunity becomes available, on the appropriate NWRS website (referenced in the NOFO)." (capitalization in original). The Notice of Cooperative Agricultural Opportunity must contain a "general description of the CAA," the "objective criteria under which the Service will evaluate applications," the "date by which the Service must receive applications," and the "details on how to apply for the CAA."

Defendant asserts that the Fish and Wildlife Service published the required Notice of Funding Opportunity on October 20, 2017. See VIEW GRANT OPPORTUNITY FA18AS00003, U.S. FISH & WILDLIFE SERV., https://www.grants.gov/web/grants/search-grants.html (last visited Dec. 17, 2018) (publishing a notice in which the Fish and Wildlife Service stated that the Fish and Wildlife Service would be accepting applications for cooperative agricultural agreements until September 30, 2023). The October 20, 2017 notice stated:

> The objectives for the use of cooperative agriculture in the National Wildlife Refuge System (NWRS) are: production or modification of specific cover types or growing methods that meet the life history requirements of species for which we have established objectives (e.g., waterfowl production); production of foods for wildlife species for which we have established objectives; and/or maintenance, rehabilitation, or reestablishment of natural habitat. Cooperative agriculture is when a person or entity conducts agricultural practices on NWRS lands in support of the Service conservation

---

[6] In defendant's current motion to dismiss in this court, defendant asserts that the Fish and Wildlife Service "now refers" to cooperative farming agreements as cooperative agricultural agreements.

and resource management objectives and there is substantial involvement between the Service and that person or entity.

Id. The October 20, 2017 notice stated that "individual cooperative agricultural opportunities" could be approved for a period of several months to five years, and that the Fish and Wildlife Service would post the individual cooperative agricultural opportunities on https://www.fws.gov/refuges/whm/cooperativeAgriculture.html/.[7] Id.

On May 29, 2018, the United States District Court for the Eastern District of Washington issued an Order dismissing the only remaining claim, Count III, included in Mr. Hymas' amended complaint in that court. See Hymas v. U.S. Dep't of Interior, No. 4:16-CV-5091-SMJ, 2018 WL 3326837, at *1 (E.D. Wash. May 29, 2018) (Hymas VI), appeal docketed, No. 18-35488 (9th Cir. June 1, 2018). The Eastern District of Washington court in Hymas VI determined that, as a result of the Fish and Wildlife Service's August 3, 2017 policy update, "Hymas's remaining claim that FWS's process for awarding CFA's [sic] was arbitrary and capricious" was moot and that "the Court lacks jurisdiction to consider the claims." Id. at *5. Therefore, Mr. Hymas' amended complaint had been dismissed in its entirety. Id. On June 1, 2018, judgment was entered in favor of the defendant in the proceeding before the United States District Court for the Eastern District of Washington. Also on June 1, 2018, Mr. Hymas filed a notice of appeal, which stated that Mr. Hymas "hereby appeals to the United States Court of Appeals for the Ninth Circuit, from an Order (ORDER GRANTING DEFENDANTS' MOTION TO DISMISS) entered in this action on the 29th of May, 2018." (capitalization in original).

On July 30, 2018, Mr. Hymas filed his opening brief in the United States Court of Appeals for the Ninth Circuit, which is captioned as Hymas v. United States Department of Interior, Case No. 18-35488 (9th Cir. June 1, 2018) (Hymas VII). In his opening Ninth Circuit brief, plaintiff asks, "[c]an the Government produce any CFAs published as legally required in the www.grants.gov database let alone executed per the FGCAA? These are very simple things to establish and or admit, either they have happened or they haven't, and it [sic] they haven't there can be no compliance." According to plaintiff's opening brief, the Fish and Wildlife Service's "so-called cooperative farming program always has been and 100% continues to be a black-op for the FWS specifically and also the DOI in general as other agencies do essentially the same thing only on a smaller scale." Plaintiff further asserts:

> Appellant is not aware of any of the thousands of so called "cooperative farming agreements" (CFAs) from 2012 to present or even the newly

---

[7] As of the date of issuance of this Opinion, the Fish and Wildlife Service has one current "opportunity" posted, in which the Fish and Wildlife Service states that the "Sherburne National Wildlife Refuge in Sherburne County, Minnesota, is accepting bids for one-year cooperative grazing agreements on three tracts of land totaling 4,500 acres for the 2019 grazing season" until December 18, 2018. See COOPERATIVE AGRICULTURE, U.S. FISH & WILDLIFE SERV., https://www.fws.gov/refuges/whm/cooperativeAgriculture.html (last visited Dec. 17, 2018).

conjured "Cooperative Agriculture Agreements" (cf. 620 FW 2) representing hundreds of thousands of acres of farm land with an annual rental value of hundreds of millions of dollars that have ever complied with the Federal Grant and Cooperative Agreement Act or its flow-down regulations (2 CFR 200), Department of Interior - Department Manual (DM) 505 DM 2, "Procurement Contracts, Grant and Cooperative Agreements" of the FWS regulations of 515-529 FW "Federal Financial Assistance". Every single acre always has been and is currently, to this day, operated completely outside all the Government oversite and legal requirements of the above listed references with the possible exception of the five contracts executed in 2014.

Plaintiff's contends that "the current situation does not address the wrongs that happened in 2012 and 2013, including Appellant's bid costs and attorney fees."

On September 24, 2018, the United States Court of Appeals for the Ninth Circuit issued an Order stating that "appointment of pro bono counsel in this appeal would benefit the court's review" and for the purpose of the Ninth Circuit proceeding striking Mr. Hymas' opening brief in the Ninth Circuit. The court also stayed Mr. Hymas' appeal "pending further order of this court."

In the case currently before the court initiated by plaintiff's June 11, 2018 complaint, plaintiff requests "[i]njunctive relief for all active CFAs to be bid in open competition per Federal procurement and contract law," "[d]eclaratory relief that the current so-called 'CFP' is an unlawful program currently being operated by agencies of the DOI," and any other relief this court deems appropriate. Plaintiff also requests "[t]he granting of Class Action status in this matter for all prejudiced farmers nationally including those classes of farmers required to have specific consideration per Federal law." (capitalization in original).

Defendant filed a motion to dismiss plaintiff's complaint in this court for lack of jurisdiction in the above-captioned case. In the motion to dismiss, defendant asserts that, in accordance with 28 U.S.C. § 1500 (2012), plaintiff's appeal to the United States Court of Appeals for the Ninth Circuit "divests this court of jurisdiction" over plaintiff's complaint. Defendant also asserts that this court lacks jurisdiction over Mr. Hymas' complaint because plaintiff has not identified a "money-mandating source for the Court's § 1491(a) jurisdiction" and Hymas II, which was issued by the United States Court of Appeals for the Federal Circuit, "precludes this Court from determining that it possesses bid-protest jurisdiction over Mr. Hymas's complaint." Defendant also contends that Mr. Hymas may not represent any class of farmers. Plaintiff has not filed a response to defendant's motion to dismiss.

The case history of Mr. Hymas' filings are summarized in the timeline below:

1. <u>Hymas I</u> - <u>Hymas v. United States</u>, 117 Fed. Cl. 466 (2014) (<u>Hymas I</u>), vacated, 810 F.3d 1312 (Fed. Cir.), <u>reh'g en banc denied</u> (Fed. Cir. 2016), <u>cert. denied</u>, 137 S. Ct. 2196 (2017).
   - April 25, 2013: Mr. Hymas filed a bid protest in the United States Court of Federal Claims.
   - July 25, 2014: The United States Court of Federal Claims issued an Opinion in <u>Hymas I</u>.
   - July 28, 2014: The United States Court of Federal Claims entered judgment in favor of Mr. Hymas.
   - September 24, 2014: Defendant filed a notice of appeal to the United States Court of Appeals for the Federal Circuit.

2. <u>Hymas II</u> - <u>Hymas v. United States</u>, 810 F.3d 1312 (Fed. Cir.) (<u>Hymas II</u>), <u>reh'g en banc denied</u> (Fed. Cir. 2016), <u>cert. denied</u>, 137 S. Ct. 2196 (2017).
   - January 14, 2016: The United States Court of Appeals for the Federal Circuit issued an Opinion in <u>Hymas II</u>.
   - February 29, 2016: Mr. Hymas filed a petition for en banc rehearing.
   - March 30, 2016: The United States Court of Appeals for the Federal Circuit denied Mr. Hymas' petition for en banc rehearing.
   - April 6, 2016: The United States Court of Appeals issued a mandate vacating the judgment entered by the court in <u>Hymas I</u> and remanding to the United States Court of Federal Claims for disposition consistent with the Opinion in <u>Hymas II</u>.

3. <u>Hymas III</u> - <u>Hymas v. United States</u>, 137 S. Ct. 2196 (2017) (<u>Hymas III</u>).
   - June 28, 2016: Mr. Hymas filed a petition for writ of certiorari.
   - April 13, 2017: The United States Supreme Court placed Mr. Hymas' petition for a writ of certiorari on the United States Supreme Court's docket.
   - May 30, 2017: The United States Supreme Court denied Mr. Hymas' petition for writ of certiorari.

4. <u>Hymas IV</u> - <u>Hymas v. United States</u>, 126 Fed. Cl. 195 (2016) (<u>Hymas IV</u>).
   - April 7, 2016: Mr. Hymas filed a motion to transfer his case to the United States District Court for the Eastern District of Washington.
   - April 11, 2016: The United States Court of Federal Claims granted Mr. Hymas' April 7, 2016 motion and directed the Clerk of the Court to transfer Mr. Hymas' case to the United States District Court for the Eastern District of Washington.

5. <u>Hymas V</u> - <u>Hymas v. U.S. Dep't of Interior</u>, No. 4:16-CV-5091-SMJ, 2017 WL 3258716 (E.D. Wash. Mar. 20, 2017) (<u>Hymas V</u>), <u>recons. denied</u>, No. 4:16-CV-5091-SMJ, 2017 WL 3255283 (E.D. Wash. Apr. 25, 2017).
   - December 14, 2016: Mr. Hymas filed a seven-count amended complaint in the United States District Court for the Eastern District of Washington.

- January 13, 2017: Defendants in the United States District Court for the Eastern District of Washington filed a partial motion to dismiss Mr. Hymas' amended complaint in the United States District Court for the Eastern District of Washington.
- March 20, 2017: The United States District Court for the Eastern District of Washington issued an Order in Hymas V granting defendants' partial motion to dismiss and dismissing all but one of Mr. Hymas' claims.
- March 24, 2017: Mr. Hymas filed a motion for reconsideration of the United States District Court for the Eastern District of Washington's Order in Hymas V.
- April 25, 2017: The United States District Court for the Eastern District of Washington denied Mr. Hymas' motion for reconsideration.

6. Hymas VI - Hymas v. U.S. Dep't of Interior, No. 4:16-CV-5091-SMJ, 2018 WL 3326837 (E.D. Wash. May 29, 2018) (Hymas VI), appeal docketed, No. 18-35488 (9th Cir. June 1, 2018).
   - August 17, 2017: Defendants filed a motion to dismiss Mr. Hymas' remaining claim in the United States District Court for the Eastern District of Washington.
   - May 29, 2018: The United States District Court for the Eastern District of Washington issued an Order in Hymas VI granting defendants' August 17, 2017 motion and dismissing the only remaining claim in Mr. Hymas' amended complaint.
   - June 1, 2018: The United States District Court for the Eastern District of Washington entered judgment in favor of defendants.
   - June 1, 2018: Mr. Hymas filed a notice of appeal to United States Court of Appeals for the Ninth Circuit.

7. Hymas VII - Hymas v. U.S. Dep't of Interior, Case No. 18-35488 (9th Cir. June 1, 2018) (Hymas VII).
   - June 4, 2018: The United States Court of Appeals for the Ninth Circuit received Mr. Hymas' appeal.
   - June 5, 2018: The United States Court of Appeals for the Ninth Circuit docketed Mr. Hymas' appeal.
   - July 30, 2018: Mr. Hymas filed an opening brief in the United States Court of Appeals for the Ninth Circuit.
   - September 24, 2018: The United States Court of Appeals for the Ninth Circuit issued an Order stating that "appointment of pro bono counsel in this appeal would benefit the court's review" and staying Mr. Hymas' appeal "pending further order of this court."

8. Hymas VIII - Proceedings in the above-captioned case in this court in Hymas v. United States, Case No. 18-831C (Fed. Cl. June 11, 2018) (Hymas VIII).
   - June 11, 2018: Plaintiff filed the complaint and an Application to Proceed In Forma Pauperis in this court.
   - August 10, 2018: Defendant filed a motion to dismiss plaintiff's complaint.

**DISCUSSION**

The court recognizes that plaintiff is proceeding pro se. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, a pro se plaintiff is entitled to a more liberal construction of the pro se plaintiff's pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 135 S. Ct. 1909 (2015). However, "there is no 'duty [on the part] of the trial court . . . to create a claim which [plaintiff] has not spelled out in his [or her] pleading . . . .'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Golden v. United States, 129 Fed. Cl. 630, 637 (2016); Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995))); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

In the above-captioned case, plaintiff also filed an Application to Proceed In Forma Pauperis. In order to provide access to this court for those who cannot pay the filing fees mandated by Rule 77.1(c) (2018) of the Rules of the United States Court of Federal Claims (RCFC), 28 U.S.C. § 1915 (2012) permits a court to allow a plaintiff to file a complaint without payment of fees or security, under specific circumstances. Section 1915(a)(1) states that:

> Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner[8] possesses [and] that the person is unable to pay

---

[8] A number of courts have reviewed the words of 28 U.S.C. § 1915(a)(1), regarding in forma pauperis applications by non-prisoner litigants in federal courts, and have

such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1). Therefore, the statute at 28 U.S.C. § 1915(a)(1) requires a person to submit an affidavit with a statement of all the applicant's assets, and that the affidavit state the nature of the action, defense, or appeal and affiant's belief that the person is entitled to redress. See id.

When enacting the in forma pauperis statute, 28 U.S.C. § 1915, Congress recognized that "'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 324 (1989)); see also McCullough v. United States, 76 Fed. Cl. 1, 3 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007). Accordingly, Congress included subsection (e) in the in forma pauperis statute, which allows courts to dismiss lawsuits determined to be "frivolous or malicious." 28 U.S.C. § 1915(e). The United States Supreme Court has found that "a court may dismiss a claim as factually frivolous only if the facts alleged are 'clearly baseless' . . . a category encompassing allegations that are 'fanciful' . . . 'fantastic' . . . and 'delusional . . . .'" Denton v. Hernandez, 504 U.S. at 32-33 (internal citations omitted); see also Floyd v. United States, 125 Fed. Cl. 183, 191 (2016); Jones v. United States, 122 Fed. Cl. 543, 545 (2015), appeal dismissed (Fed. Cir. 2016); McCullough v. United States, 76 Fed. Cl. at 3; Schagene v. United States, 37 Fed. Cl. 661, 663 (1997). Courts,

---

concluded that Congress did not intend for non-prisoners to be barred from being able to proceed in forma pauperis in federal court. See, e.g., Lister v. Dep't of Treasury, 408 F.3d 1309, 1312 (10th Cir. 2005) ("Section 1915(a) applies to all persons applying for [in forma pauperis] status, and not just to prisoners."); Haynes v. Scott, 116 F.3d 137, 139 (5th Cir. 1997) (noting that "[t]here is no indication in the statute or the legislative history of [§ 1915] that Congress meant to curb [in forma pauperis] suits by nonprisoners"); Floyd v. U.S. Postal Serv., 105 F.3d 274, 275-76 (6th Cir.), reh'g denied (6th Cir. 1997); see also In re Prison Litigation Reform Act, 105 F.3d 1131, 1134 (6th Cir. 1997) (discussing how to administer in forma pauperis rights to a non-prisoner, thereby acknowledging the rights of non-prisoners to apply for in forma pauperis status); Leonard v. Lacy, 88 F.3d 181, 183 (2d Cir. 1996) (using "sic" following the word "prisoner" in 28 U.S.C. § 1915(a)(1) seemingly to indicate that the use of that word was too narrow); Smith v. United States, 113 Fed. Cl. 241, 243 (2013); Powell v. Hoover, 956 F. Supp. 564, 566 (M.D. Pa. 1997) (stating that a "fair reading of the entire section [28 U.S.C. § 1915(a)(1)] is that it is not limited to prisoner suits"). Moreover, 28 U.S.C. § 1915(a)(1) refers to both "person" and "prisoner." The word "person" is used three times in the subsection, while the word "prisoner" is used only once. This court, therefore, finds that the single use of the word "prisoner" in the language of 28 U.S.C. § 1915(a)(1) was not intended to eliminate a non-prisoner from proceeding in federal court in forma pauperis, provided that the civil litigant can demonstrate appropriate need. Any other interpretation is inconsistent with the statutory scheme of 28 U.S.C. § 1915.

however, should exercise caution in dismissing a case under section 1915(e) because a claim that the court perceives as unlikely to be successful is not necessarily frivolous. See Denton v. Hernandez, 504 U.S. at 33. As stated by the United States Supreme Court, "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Id.

The standard in 28 U.S.C. § 1915(a)(1) for in forma pauperis eligibility is "unable to pay such fees or give security therefor." Determination of what constitutes "unable to pay" or unable to "give security therefor," and, therefore, whether to allow a plaintiff to proceed in forma pauperis is left to the discretion of the presiding judge, based on the information submitted by the plaintiff or plaintiffs. See, e.g., Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 217-18 (1993); Roberson v. United States, 115 Fed. Cl. 234, 239, appeal dismissed, 556 F. App'x 966 (Fed. Cir. 2014); Fuentes v. United States, 100 Fed. Cl. 85, 92 (2011). This court and its predecessors were established to make available a user friendly forum in which plaintiffs can submit their legitimate claims against the sovereign, limited only by the legislative decision to waive sovereign immunity as to the types of claims allowed. In fact, prominently posted at the entrance to this courthouse are the words of Abraham Lincoln: "It is as much the duty of government to render prompt justice against itself, in favor of citizens, as it is to administer the same, between private individuals."

Interpreting an earlier version of the in forma pauperis statute, the United States Supreme Court offered the following guidance:

> We cannot agree with the court below that one must be absolutely destitute to enjoy the benefit of the statute. We think an affidavit is sufficient which states that one cannot because of his poverty "pay or give security for the costs . . . and still be able to provide" himself and dependents "with the necessities of life." To say that no persons are entitled to the statute's benefits until they have sworn to contribute to payment of costs, the last dollar they have or can get, and thus make themselves and their dependents wholly destitute, would be to construe the statute in a way that would throw its beneficiaries into the category of public charges. The public would not be profited if relieved of paying costs of a particular litigation only to have imposed on it the expense of supporting the person thereby made an object of public support. Nor does the result seem more desirable if the effect of this statutory interpretation is to force a litigant to abandon what may be a meritorious claim in order to spare himself complete destitution. We think a construction of the statute achieving such consequences is an inadmissible one.

Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339-40 (1948) (omissions in original). In Fiebelkorn v. United States, for example, a Judge of the United States Court of Federal Claims indicated that:

> [T]he threshold for a motion to proceed in forma pauperis is not high: The statute requires that the applicant be 'unable to pay such fees.' 28 U.S.C. § 1915(a)(1). To be 'unable to pay such fees' means that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute.

Fiebelkorn v. United States, 77 Fed. Cl. 59, 62 (2007); see also McDermott v. United States, 130 Fed. Cl. 412, 414 (quoting Fiebelkorn v. United States, 77 Fed. Cl. at 62), aff'd, No. 2017-1790, 2017 WL 4082033 (Fed. Cir. June 13, 2017); Fuentes v. United States, 100 Fed. Cl. at 92; Brown v. United States, 76 Fed. Cl. 762, 763 (2007); Hayes v. United States, 71 Fed. Cl. 366, 369 (2006).

In plaintiff's Application to Proceed In Forma Pauperis, pro se plaintiff Jay Hymas, doing business as Dosmen Farms, states that he is currently unemployed, only has $2,200.00 in cash or a checking or saving account, and has "vehicles valued at about $10,000." Plaintiff also states that he provides "100%" of the support for his three children and has approximately $3,000.00 in monthly expenses for "[h]ousing, food and utilities." Plaintiff also states that "[p]reviously (terminating in April of 2018) I had a professional contract receiving money of approximately $120,000 for the past 12 months however this contract was cancelled and I do not know when or if I will obtain further contracts." Despite having a "professional contract" valued at approximately $120,000.00, the court notes that plaintiff asserted in his Application to Proceed In Forma Pauperis that plaintiff only had approximately $12,200.00 in assets approximately two months after plaintiff's "professional contract" ended without indicating whether any money from the contract for $120,000.00 was remaining. Plaintiff's financial posture, therefore, is somewhat unclear. Plaintiff's Application to Proceed In Forma Pauperis, however, is moot, because, as discussed below, plaintiff's complaint is dismissed.

In defendant's motion to dismiss, defendant first argues that pro se plaintiff Jay Hymas, doing business as Dosmen Farms, cannot represent "every other American farmer" in a class action lawsuit, as plaintiff requests in its complaint, "because a pro se plaintiff may not represent a class." (emphasis in original). RCFC 83.1(a)(3) (2018) states that "[a]n individual who is not an attorney may represent oneself or a member of one's immediate family, but may not represent a corporation, an entity, or any other person in any proceeding before this court." RCFC 83.1(a)(3). Pro se plaintiff Jay Hymas, doing business as Dosmen Farms, therefore, cannot represent a class of farmers in the above-captioned case. See id.; see also Godfrey v. United States, 132 Fed. Cl. 689, 695, appeal dismissed, No. 17-2501, 2017 WL 7796297 (Fed. Cir. Nov. 15, 2017). Plaintiff also may not represent a business or corporate entity, such as Dosmen Farms, as plaintiff appears to be, although the nature of Dosmen Farms is not clear from the record before the court. See RCFC 83.1.

Moreover, defendant asserts that the statute at 28 U.S.C. § 1500 "divests this court of jurisdiction" over plaintiff's complaint because of "Mr. Hymas's appeal to the Ninth Circuit," which defendant asserts was pending when plaintiff filed the complaint in the above-captioned case. Defendant argues:

> [H]is [plaintiff's] complaint raises some of the issues he is also attempting to raise before the Ninth Circuit. As we have shown above, in both his Ninth Circuit appeal brief and his complaint, Mr. Hymas raises the issue of perceived notice requirements he contends the Interior Department and the Service have not met. As also shown above, in both documents he refers to the cooperative farming program as a "black-operation," refers the courts to the same websites on which he contends cooperators must be identified, accuses the Interior Department and Service of not practicing the required "oversight," and erroneously asserts that the Service does not require farmers applying for cooperative farming opportunities to use forms bearing OMB numbers. In short, there is no doubt that Mr. Hymas initiated this lawsuit in hopes of having two forums simultaneously hear the same arguments. The timing of his notice of appeal to the Ninth Circuit, however, divests this Court of jurisdiction to consider them.

(internal references omitted).

The statute at 28 U.S.C. § 1500 provides:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500. The application of Section 1500 turns on whether a plaintiff, at the time suit was filed in the Court of Federal Claims, had a suit pending in another federal court against the United States or a person acting under authority of the United States, based on substantially the same operative facts as the suit filed in this court, regardless of the relief sought. See United States v. Tohono O'Odham Nation, 563 U.S. 307, 315 (2011). The United States Court of Appeals for the Federal Circuit has stated that, "[t]o determine whether § 1500 applies, a court must make two inquiries: '(1) whether there is an earlier-filed "suit or process" pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are "for or in respect to" the same claim(s) asserted in the later-filed Court of Federal Claims action.'" Petro-Hunt, L.L.C. v. United States, 862 F.3d 1370, 1381 (Fed. Cir. 2017) (quoting Res. Invs., Inc. v. United States, 785 F.3d 660, 664 (Fed. Cir. 2015) (quoting Brandt v. United States, 710 F.3d 1369, 1374 (Fed. Cir. 2013))), cert. denied, 138 S. Ct. 1989 (2018).

"The question of whether another claim is 'pending' for purposes of § 1500 is determined at the time at which the suit in the Court of Federal Claims is filed, not the time at which the Government moves to dismiss the action." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1548 (Fed. Cir. 1994) (discussing the United States Supreme Court's Opinion in Keene Corp. v. United States, 508 U.S. 200 (1993)),

overruled in part on other grounds by United States v. Tohono O'Odham Nation, 563 U.S. at 315; see also Zainulabeddin v. United States, 138 Fed. Cl. 492, 511 (2018) (quoting Lovelandies Harbor, Inc. v. United States, 27 F.3d at 1548). Indeed, "'the jurisdiction of the Court depends upon the state of things at the time of the action brought.'" Keene Corp. v. United States, 508 U.S. at 207 (quoting Mollan v. Torrance, 22 U.S. 537, 539 (1824) (Marshall, C.J.) (other citations omitted) (noting that the Court of Federal Claims correctly applied section 1500 by "looking to the facts existing when Keene filed each of its complaints"). When a District Court has entered judgment dismissing a case, the United States Court of Appeals for the Federal Circuit has established that once "a notice of appeal is filed," then the case is "pending" under 28 U.S.C. § 1500. Brandt v. United States, 710 F.3d at 1380.

The United States Supreme Court offered some clarification regarding the effect of 28 U.S.C. § 1500 in Tohono O'Odham Nation. In the words of the United States Supreme Court, section 1500 "bars jurisdiction in the CFC [Court of Federal Claims] not only if the plaintiff sues on an identical claim elsewhere – a suit 'for' the same claim – but also if the plaintiff's other action is related although not identical – a suit 'in respect to' the same claim." United States v. Tohono O'Odham Nation, 563 U.S. at 312. The Supreme Court explained, "two suits are for or in respect to the same claim when they are based on substantially the same operative facts." Id. at 318 (citing Keene Corp. v. United States, 508 U.S. at 206).

According to the United States Supreme Court, there is, however, no set test to determine when, "two suits have sufficient factual overlap to trigger the jurisdictional bar." Id. Under 28 U.S.C. § 1500, the facts alleged in "the two co-pending suits need not be identical." Ministerio Roca Solida v. United States, 778 F.3d 1351, 1353 (Fed. Cir.) (citing United States v. Tohono O'Odham Nation, 563 U.S. at 312), cert. denied, 136 S. Ct. 479 (2015); see also Klamath Irrigation Dist. v. United States, 113 Fed. Cl. 688, 702 (2013) ("It is equally established that the facts alleged in the two complaints need not be identical; 'rather, the two complaints must stem from the same events.'" (quoting Cent. Pines Land, 99 Fed. Cl. 394, 401 (2011))). Although the assessment must be on a case-by-case factual basis, the United States Supreme Court in Tohono O'Odham Nation provided a general framework for consideration. In its decision, the Supreme Court stated in Tohono O'Odham Nation:

> The remaining question is whether the Nation's two suits have sufficient factual overlap to trigger the jurisdictional bar. The CFC [United States Court of Federal Claims] dismissed the action here in part because it concluded that the facts in the Nation's two suits were, "for all practical purposes, identical." 79 Fed. Cl. 645, 656 (2007). It was correct to do so. The two actions both allege that the United States holds the same assets in trust for the Nation's benefit. They describe almost identical breaches of fiduciary duty – that the United States engaged in self-dealing and imprudent investment, and failed to provide an accurate accounting of the assets held in trust, for example. Indeed, it appears that the Nation could have filed two identical complaints, save the caption and prayer for relief,

without changing either suit in any significant respect. Under § 1500, the substantial overlap in operative facts between the Nation's District Court and CFC suits precludes jurisdiction in the CFC.

Id. at 317.

As indicated above, on May 29, 2018, the United States District Court for the Eastern District of Washington issued an Order dismissing Mr. Hymas' amended complaint in that court. See Hymas VI, 2018 WL 3326837, at *1. On June 1, 2018, plaintiff filed a notice of appeal in the United States District Court for the Eastern District of Washington, in which plaintiff stated that he "hereby appeals to the United States Court of Appeals for the Ninth Circuit, from an Order (ORDER GRANTING DEFENDANTS' MOTION TO DISMISS) entered in this action on the 29th of May, 2018." (capitalization in original). On September 24, 2018, the United States Court of Appeals for the Ninth Circuit issued an Order stating that plaintiff's "appeal is stayed pending further order of this court," but the United States Court of Appeals for the Ninth Circuit did not address the merits of Mr. Hymas' appeal in that court. Plaintiff filed his complaint in this court on June 11, 2018 after plaintiff filed his appeal to the Ninth Circuit on June 1, 2018. On June 11, 2018, when plaintiff filed his case in this court, plaintiff's appeal in the Ninth Circuit was pending. See Beberman v. United States, 129 Fed. Cl. 539, 545 (2016) ("The claims presented in a pending appeal before an appellate court are deemed pending claims for purposes of applying Section 1500." (citations omitted)), recons. denied, No. 16-1006C, 2017 WL 436110 (Fed. Cl. Feb. 1, 2017).

Both plaintiff's complaint in this court and plaintiff's opening brief in the Ninth Circuit assert that the Fish and Wildlife Service's award of cooperative agreements for farming violate the Federal Grant and Cooperative Agreement Act. In the current complaint in this court, plaintiff contends that "this action centers on the fact that the DOI does nothing to make these so-called CFAs actual assistance awards per the Federal Grant and Cooperative Agreement Act (31 U.S. Code § 6301) other than the deceptive moniker given them - Cooperative Farming Agreements." In plaintiff's opening brief in the Ninth Circuit, plaintiff asks, "[c]an the Government produce any CFAs published as legally required in the www.grants.gov database let alone executed per the FGCAA?" In both plaintiff's complaint in this court and in the Ninth Circuit appeal, as articulated in plaintiff's opening brief in the Ninth Circuit, plaintiff alleges issues with the purpose of the Fish and Wildlife Service's cooperative agreements, the forms the Fish and Wildlife Service uses when awarding cooperative agreements, and government oversight of the Fish and Wildlife Service's award of cooperative agreements. In plaintiff's complaint in this court, plaintiff asserts that "[n]o record exists within www.grants.gov of any CFAs for recent years as required by all assistance programs, in addition the forms used (if used at all) contain no valid OMB number or OMB and GAO oversite." Likewise, in plaintiff's opening brief in the Ninth Circuit, plaintiff asserts the Fish and Wildlife Service's forms for awarding cooperative agreements involving farming "are not Government approved and carry no valid OMB numbers." In both plaintiff's complaint in this court and plaintiff's opening brief in the Ninth Circuit, plaintiff alleges that the Fish and Wildlife Service's Cooperative Farming Program is a "black-operation" that does not comply with federal law.

Plaintiff's complaint in this court and plaintiff's opening brief in the Ninth Circuit both contain allegations regarding previously awarded cooperative agreements, as well as the Fish and Wildlife Service's current procedures for awarding cooperative agreements. According to plaintiff's complaint in this court, "Plaintiff has requested via letters to the DOI and its agencies, since 2015, to be allowed to compete in its 'CFP' nationally, to date Plaintiff has had no response nor has any notice been found at www.grants.gov." In plaintiff's complaint in this court, plaintiff argues that the "so-called 'CFP' is an unlawful program currently being operated by agencies of the DOI." In plaintiff's opening brief in the Ninth Circuit, plaintiff argues that "the FWS has never at any time ceased its 'wrongful' behavior with the possible exception of the 5 one-time contracts issued under injunction in 2014 but even those were done unlawfully and are on appeal." Plaintiff argues in his opening brief in the Ninth Circuit that "[i]f one searches the Catalog of Federal Domestic Assistance as informed by 620 FW 2.15 there are no entries for any farm land offered for bid for any year including the current year (2018)." In plaintiff's opening brief in the Ninth Circuit, plaintiff further asserts that he "is not aware of any of the thousands of so called 'cooperative farming agreements' (CFAs) from 2012 to present . . . that have ever complied with the Federal Grant and Cooperative Agreement Act or its flow-down regulations."

Plaintiff's opening brief in the Ninth Circuit, however, asserts that "the current situation does not address the wrongs that happened in 2012 and 2013, including Appellant's bid costs and attorney fees," which presumably refers to Mr. Hymas' attempt to obtain cooperative farming agreements in 2012 and 2013.[9] Plaintiff's two-page, double-spaced complaint in this court does not specifically reference Mr. Hymas' activities in 2012 or 2013.

In the above-captioned case, plaintiff's complaint in this court and opening brief in the Ninth Circuit both arise out of the Fish and Wildlife Service's award of cooperative agreements for farming; both contend that the Fish and Wildlife Service's past and current process for awarding cooperative agreements involving farming violate federal contracting law; both assert that the Fish and Wildlife Service's program for awarding cooperative agreements is a "black-operation" that the Fish and Wildlife Service operates the program outside of federal law; both question the validity of the forms used by the Fish and Wildlife Service when awarding cooperative agreements; and both argue that there is no government oversight of the Fish and Wildlife Service's award of cooperative agreements. The factual allegations in plaintiff's complaint in this court and plaintiff's opening brief in the Ninth Circuit center on the Fish and Wildlife Service's award of cooperative agreements involving farming and the method by which the Fish and Wildlife Service awards cooperative agreements involving farming. The court finds that plaintiff's complaint in this court and appeal in the Ninth Circuit are based on substantially the same operative facts. See Iowa Tribe of Kan. & Neb. v. United States, 101 Fed. Cl. 481, 484

---

[9] According to plaintiff's opening brief in the Ninth Circuit, plaintiff "approached the McNary Wildlife refuge located in the vicinity of Burbank, WA in order to grow crops on idle" land in 2012.

(2011) ("Plaintiff is seeking redress for injuries arising from the same transaction or occurrence: the Government's ongoing mismanagement of the Tribe's trust assets. Therefore, the Court finds that this suit is based on substantially same operative facts as Plaintiff's District Court suit."). Because plaintiff's appeal in the Ninth Circuit was pending when plaintiff filed the complaint in the above-captioned case and the two cases involve substantially the same operative facts, the statute at 28 U.S.C. § 1500 precludes this court from exercising jurisdiction over plaintiff's complaint in this court.[10]

---

[10] According to plaintiff's complaint, "Plaintiff invokes the jurisdiction of this Court via the Tucker Act, 28 U.S.C. § 1491 a & b." In addition to defendant's argument addressing 28 U.S.C. § 1500, defendant asserts that "the complaint fails to establish the Court's subject-matter jurisdiction under either subsection." Regarding § 1491(a), defendant argues that plaintiff's "complaint identifies no money-mandating source." Although plaintiff's complaint alleges that the court has jurisdiction under 28 U.S.C. § 1491(a), plaintiff's complaint does not identify a money-mandating source, and the "Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976); see also Bias v. United States, 124 Fed. Cl. 663, 666 (2016).

Regarding § 1491(b), defendant argues that "[t]he holding In _Hymas II_ precludes this Court from determining that it possesses bid-protest jurisdiction over Mr. Hymas's complaint." Although the Fish and Wildlife Service's August 2017 update to part 620, chapter 2, of the Fish and Wildlife Service Manual changed the method by which the Fish and Wildlife Service awards cooperative agreements involving farming on National Wildlife Refuge System land, the August 2017 update does not appear to have altered the underlying nature and function of the Fish and Wildlife Service's cooperative agreements involving farming as analyzed by the United States Court of Appeals in Federal Circuit in Hymas II. The Fish and Wildlife Service's purpose for awarding cooperative agreements involving farming, the Fish and Wildlife Service's participation in cooperative agreements, and the cooperator's role in cooperative agreements all do not appear to have been affected by the August 2017 update. Consequently, in Hymas II, the Federal Circuit decided the issue of whether the court has jurisdiction under 28 U.S.C. § 1491(b) over plaintiff's claim that the Fish and Wildlife Service has improperly awarded cooperative agreements involving farming on National Wildlife Refuge System lands, and plaintiff would be collaterally estopped from raising the issue again before this court. See Williams v. United States, 86 Fed. Cl. 594, 603 (2009) (stating that "the standard for identical issues has been satisfied" when "the record discloses no material alteration in the facts and circumstances surrounding this forfeiture").

## CONCLUSION

Defendant's motion to dismiss is **GRANTED**. Plaintiff's complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** in accordance with this Opinion.

**IT IS SO ORDERED.**

**MARIAN BLANK HORN**
**Judge**